# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ALEXSANDRO ROMAN, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 19-5204 |
| | : | |
| DR. LITTLE, *et al.* | : | |
| Defendants. | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                  **December 4, 2019**

Inmate Alexsandro Roman *pro se* sues the Pennsylvania Department of Corrections and certain prison officials and medical staff employed at SCI-Chester alleging their August and September 2018 delay in medical care including in a three-day postponement of a sick call appointment caused him injury. Mr. Roman seeks leave to proceed *in forma pauperis*. We grant Mr. Roman leave to proceed *in forma pauperis* but dismiss the Complaint with the exception of the deliberate indifference and negligence claims against medical professionals Dr. Little and Physician Assistant Nicholson. We also grant him leave to replead the dismissed claims if he can do so consistent with this Memorandum other than civil rights and state law claims against the Department of Corrections, against state actors in their official capacity, and for disability discrimination against the individual state actors.

**I.**    *Pro se* **allegations**

Alexsandro Roman is a "Hispanic-Spanish speaking prisoner who was physically disabled and suffering from a serious medical condition of a dislocated disc, arthritis, and infection in the bone at L-2 and L-3" which required immediate medical treatment during his confinement at SCI-

Chester.[1] Before he began to serve a prison term at SCI-Chester, Temple University Medical Hospital prescribed medication for these ailments.[2]

### *Medical treatment in August 2018.*

On August 1, 2018, Hahnemann Hospital discharged Mr. Roman to SCI-Chester in extreme physical pain.[3] Mr. Roman gave his Hahnemann records to prison Medical Director Dr. Little and Physician Assistant Nicholson, who reviewed them.[4] Mr. Roman told SCI-Chester's medical intake staff, including Dr. Little and Physician Assistant Nicholson, about his injuries and medical needs.[5] On August 1, 2018, and for many days thereafter, Mr. Roman suffered excruciating physical pain.[6] He asked Dr. Little and Physician Assistant Nicholson for "medications for pain, a cane to walk with, bottom bunk status, and [a] no stairs status."[7] They "intentionally and deliberately disregarded [his] requests for medical assistance."[8]

### *Mr. Roman's September 10, 2018 sick call is cancelled but gets his medicine three days later.*

Over five weeks later, on September 6, 2018, Mr. Roman submitted a sick call request, and SCI-Chester scheduled a sick call for September 10, 2018.[9] Upon arriving for the sick call, Correctional Officer Dixon told Mr. Roman of no more available sick call services for the remainder of the day.[10] As Mr. Roman now concedes, SCI-Chester had just returned to normal operations after a lockdown.[11] Mr. Roman told Officer Dixon and Lieutenant White of his "serious physical injuries", "extreme and severe physical pain" and "urgent" need to be seen by medical staff.[12] Lieutenant White assisted Officer Dixon "in refusing [him] medical care even though [he] had a scheduled appointment for medical services at sick call" and both sent him "back to his housing unit still suffering in pain from his physical injuries without any medical care."[13]

Mr. Roman grieved the denial of medical services on September 10, 2018.[14] He also "brought his medical issues to the attention of Deputy Superintendent Walls."[15] The Deputy

2

Superintendent scheduled him for a September 13, 2018 sick call at which time SCI-Chester reordered his medications.

## II. Analysis

Mr. Roman *pro se* sues state actors employed with SCI-Chester claiming they deprived him of civil rights in delaying medical care between August 1 and September 13, 2018. He sues Medical Director Dr. Little, Physician Assistant Nicholson, Officer Dixon, Lieutenant White and the Pennsylvania Department of Corrections. He pleads Dr. Little and Physician Assistant Nicholson intentionally and maliciously denied and/or delayed his medical care and medications for many days; knowingly and intentionally disregarded the medication prescription orders from Temple University Medical Hospital; and, failed to have him sign a medical records release authorization so that they could properly and appropriately treat his serious medical conditions.[16] He also alleges the individual Defendants treated him unfairly and in a discriminatory manner based on his inability to speak English, his Puerto Rican descent, and his physical disabilities.[17] Mr. Roman alleges he "personally observed all other similarly situated inmates at SCI-Chester being treated appropriately who spoke English, [and were] of a different ethnicity, and not physically disabled."[18]

In addition to the cruel and unusual punishment and equal protection theories, Mr. Roman attempts to raise claims under the Americans with Disabilities Act as a qualified individual with a physical disability while confined at SCI-Chester.[19] He alleges Defendants "denied programs, services, and activities on the account of his physical disabilities."[20]

Mr. Roman claims these constitutional torts exacerbated the pain of his dislocated disc, more arthritis in L-2 and L-3, increased infection due to lack of prescribed medication, extreme suffering without cane and medication, exposure to "M[RS]A and staph" infections, and

3

deterioration of health.[21] He seeks $75,000 in compensatory damages and $100,000 in punitive damages from each Defendant.[22]

### A. We grant Mr. Roman leave to proceed *in forma pauperis.*

Mr. Roman seeks leave to proceed without paying the filing fees under 28 U.S.C. § 1915. We grant Mr. Roman leave to proceed *in forma pauperis* as the sworn filings confirm he is an inmate incapable of paying the fees to commence this civil action.[23]

### B. Mr. Roman may only proceed on the deliberate indifference claim against Dr. Little and Physician Assistant Nicholson.

In waiving his filing fees, Congress requires us to review and dismiss the Complaint if he fails to state a claim. We determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[24] Conclusory allegations do not suffice.[25] As Mr. Roman is proceeding *pro se*, we construe his allegations liberally.[26]

#### 1. We dismiss Mr. Roman's claims against the Pennsylvania Department of Corrections with prejudice.

Mr. Roman sued the Pennsylvania Department of Corrections for civil rights violations under 42 U.S.C. § 1983. Mr. Roman cannot maintain his claims against the Department of Corrections as an arm of the Commonwealth sharing in the Commonwealth's immunity and is not a "person" liable under section 1983.[27] We dismiss Mr. Roman's civil rights claims against the Department of Corrections with prejudice.

#### 2. We dismiss Mr. Roman's civil rights claims against state officials in their official capacity with prejudice.

Mr. Roman sues the state officials in their official and individual capacities. We dismiss the official capacity claims with prejudice. The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.[28] As noted above, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department

4

of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity."[29] Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment.[30]

As Mr. Roman's official capacity claims are essentially claims against the Department of Corrections barred by the Eleventh Amendment, we dismiss these official capacity claims with prejudice.

### 3. Mr. Roman has plead deliberate indifference claims against Dr. Little and Physician Assistant Nicholson but has not plead deliberate indifference by Lieutenant White or Officer Dixon.

Mr. Roman sues Dr. Little, Physician Assistant Nicholson, Lieutenant White and Officer Dixon in their individual capacities for deliberate indifference under the Eighth Amendment. After review of the preliminary record, he may proceed against the medical professionals but not against Lieutenant White or Officer Dixon.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[31] To state an Eighth Amendment claim based on the failure to provide medical treatment, a prisoner must allege facts showing prison officials deliberately indifferent to his serious medical needs.[32] A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[33]

"A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[34] Deliberate indifference has been found "where the prison official (1)

5

knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."[35] But allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation.[36] "Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."[37]

Mr. Roman alleges Dr. Little and Physician Assistant Nicholson have medical training, and the most knowledge of Mr. Roman's injuries and condition, and are the most capable of taking action related to his medical treatment. Liberally construing his Complaint, Mr. Roman alleged facts suggesting these two medical professionals observed, examined, and knew of his injuries and the extent of those injuries, and either did not provide medical treatment or did not provide the required treatment. Liberally construing his Complaint and taking all inferences as true as we must do at this stage, Mr. Roman alleges sufficient facts to proceed on his deliberate indifference Eighth Amendment claims against these two medical Defendants.

We cannot find the same plead facts showing a deliberate indifference claim as to Lieutenant White and Officer Dixon. Mr. Roman's allegations against Lieutenant White and Officer Dixon do not state a plausible claim against them. Mr. Roman alleges Officer Dixon, working at the desk at the medical department on September 10, 2018, told him the "medical staff was not providing any more sick call services for the day."[38] Mr. Roman told Officer Dixon and Lieutenant White of "serious physical injuries" and "in extreme and severe physical pain" and "urgently needed to be seen by medical staff."[39] Mr. Roman alleges Lieutenant White assisted Officer Dixon "in refusing [him] medical care even though [he] had a scheduled appointment for

6

medical services at sick call" and both Lieutenant White and Officer Dixon sent him "back to his housing unit still suffering in pain from his physical injuries without any medical care."[40] The responses to grievances confirm a lockdown at the same time.

Mr. Roman's brief and conclusory allegations do not support a plausible claim of deliberate indifference to his serious medical needs by the prison officials. Although Mr. Roman alleges he spoke with Lieutenant White and Officer Dixon on September 10, 2018, his plead facts do not support a plausible claim against either of them for deliberate indifference to his serious medical needs. Mr. Roman has not alleged sufficient facts suggesting either Lieutenant White or Officer Dixon knew his medical condition, the extent of his medical condition, or his alleged need for medication. We cannot find they would be able to draw an inference of a substantial risk of serious harm existing if he did not see the doctor that day.[41] Nor does Mr. Roman allege facts suggesting he presented with such an obvious or immediate need for medical care to allow us to infer Lieutenant White or Officer Dixon acted with deliberate indifference.

Mr. Roman's allegations against Lieutenant White and Officer Dixon are not sufficiently developed to support a plausible claim against either. We dismiss Mr. Roman's deliberate indifference claim against those Defendants without prejudice.

### 4. Mr. Roman does not plead a disabilities claim.

Mr. Roman sues the Department of Corrections and individual state actors for discriminating against him under the Americans with Disabilities Act (Act). He cannot sue these individuals. He also fails to state a claim against these Defendants under the Act. The Supreme Court directs "Title II of the [Act], which prohibits a 'public entity' from discriminating against a 'qualified individual with a disability' on account of that individual's disability, covers inmates in state prisons."[42] To state a claim under the Act, "a plaintiff must show (a) that he has a disability,

7

(b) that he was either excluded from participation in or denied the benefits of some entity's services, programs, or activities, and (c) that such exclusion, denial of benefits, or discrimination was by reason of h[is] disability."[43]

Although our Court of Appeals has not addressed the issue precedentially, most courts hold "Title II does not authorize suits against government officers in their individual capacities."[44] Because the individual defendants are not public entities subject to suit, Mr. Roman cannot assert disability discrimination claims against them.[45] We dismiss the disability discrimination claims against the individual defendants with prejudice.

We dismiss Mr. Roman's disability claims against the Department without prejudice. "[D]ecisions about a prisoner's medical treatment generally do not give rise to a claim under the [Act]."[46] To the extent Mr. Roman bases his disability discrimination claims on something other than medical care, his allegations are too vague and conclusory to plead a claim against the Department. It is not clear from his allegations whether the Department excluded him from participation in or denied him the benefits of its services, programs, or activities, on account of a disability. We dismiss his disabilities discrimination claims against the Department without prejudice.

### 5. Mr. Roman does not plead Equal Protection claims.

Mr. Roman also suggests the Defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment. He has not plead an Equal Protection claim. We dismiss these claims without prejudice. To state a claim for equal protection, a plaintiff must allege facts showing he received different treatment than others similarly situated and the treatment was due to membership in a protected class.[47]

8

Mr. Roman pleads the individual Defendants treated him unfairly and in a discriminatory manner based on his inability to speak English, his Puerto Rican descent, and his physical disabilities.[48] Mr. Roman pleads he "personally observed all other similarly situated inmates at SCI-Chester being treated appropriately who spoke English, [and were] of a different ethnicity, and not physically disabled."[49]

Mr. Roman's single allegation, which forms the sole basis for his Equal Protection claim, amounts to nothing more than a formulaic recitation of the elements of an Equal Protection claim. He has not specifically alleged a fact regarding who would be considered similarly situated parties nor has he alleged he was the only inmate to have been subjected to inappropriate treatment. He does not state an equal protection claim.[50]

### 6. We dismiss Mr. Roman's state law claims.

Mr. Roman refers to possible state law claims without pleading facts corresponding to each alleged claim.[51] To the extent Mr. Roman asserts a state law claim against the Department, those claims are barred under the Eleventh Amendment.[52] The Eleventh Amendment bars suits against a state and its agencies in federal court seeking monetary damages.[53] Under the doctrine of sovereign immunity, we also dismiss Mr. Roman's state law claims against the Department. The Commonwealth has not waived sovereign immunity for such claims, and dismissal is proper.[54]

Mr. Roman alleges the individual Defendants are liable for "negligence" and "intentional infliction of emotional distress" caused by "extreme and outrageous" conduct.[55] Mr. Roman pleads the individual Defendants appear to be Commonwealth employees.[56] As such they are entitled to sovereign immunity to the extent they are acting within the scope of their duties.[57]

But "a Commonwealth party who is a healthcare employee may be liable for medical malpractice. § 8522(b)(2)."[58] Under this recognized exception and at this early stage of the

9

litigation, we permit Mr. Roman to proceed on his medical negligence claim against Dr. Little and Physician Assistant Nicholson, as healthcare employees. We dismiss Mr. Roman's medical negligence claim as to Lieutenant White and Officer Dixon with prejudice. To proceed on a medical negligence claim against Dr. Little and Physician Assistant Nicholson, he may need a certificate of merit for medical negligence claims.

We dismiss Mr. Roman's claims for intentional infliction of emotional distress against the individual Defendants. Mr. Roman must "demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress" to state a claim for intentional infliction of emotional distress.[59] He must plead conduct "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society."[60] Mr. Roman's brief and conclusory allegations do not provide facts to support "extreme and outrageous" conduct allowing us to find a plausible state law claim for intentional infliction of emotional distress. We dismiss Mr. Roman's emotional distress claim with prejudice.

### III. Conclusion

We grant Mr. Roman leave to proceed *in forma pauperis*, and he may proceed on his deliberate indifference and state law medical negligence claims against Dr. Little and Physician Assistant Nicholson in their individual capacities. But we dismiss with prejudice all the civil rights and state law claims against the Pennsylvania Department of Corrections and the civil rights claims against all Defendants in their official capacity. We dismiss without prejudice his civil rights claims and state law claims against Lieutenant White and Officer Dixon in their individual capacities, his equal protection claims against all individual Defendants, his disability claims, and

his claims for intentional infliction of emotional distress against Dr. Little and Physician Assistant Nicholson.

Mr. Roman may timely file an amended complaint to cure these plead deficiencies.[61] If he chooses not to file an amended complaint, we will then direct service on Dr. Little and Physician Assistant Nicholson on the deliberate indifference.

---

[1] ECF Doc. No. 3 at 8.

[2] *Id.* at 8-9.

[3] *Id.* at 9.

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.* at 9-10.

[8] *Id.*

[9] *Id.* at 10.

[10] *Id.*

[11] *Id.* at 21.

[12] *Id.* at 11.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* at 11-12.

[17] *Id.* at 12.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.* at 7.

[22] *Id.*

[23] As Mr. Roman is a prisoner, he is obligated to pay the filing fee in installments under the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

[24] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

[25] *Id.*

[26] *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

[27] *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989); *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000).

[28] *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).

[29] *Lavia*, 224 F.3d at 195.

[30] *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).

[31] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[32] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

[33] *Id.* at 837.

[34] *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).

[35] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

[36] *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

[37] *Id.* at 236.

[38] ECF Doc. No. 3 at 10.

[39] *Id.* at 11.

[40] *Id.*

[41] *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) ("Neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.").

[42] *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208 (1998) (quoting 42 U.S.C. §§ 12131 & 12132) (internal quotations omitted).

[43] *Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 167 (3d Cir. 2015) (citing 42 U.S.C. § 12132).

[44] *Williams v. Hayman*, 657 F. Supp. 2d 488, 502 (D.N.J. 2008); *see also Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (per curiam) ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim.").

[45] *See Matthews*, 613 F. App'x at 169.

[46] *Nunez v. Prime Care Health, Inc.*, No. 19-859, 2019 WL 1400466, at *1 n.3 (E.D. Pa. Mar. 27, 2019) (citing cases); *see also Kokinda v. Pennsylvania Dep't of Corr.*, 663 F. App'x 156, 159 (3d Cir. 2016) ("The District Court was also correct to conclude . . . that Kokinda's ADA claims fail because the ADA prohibits disability-based discrimination, not inadequate treatment for the disability." (footnotes and internal quotations omitted)); *Brown v. Pennsylvania Dep't of Corr.*, 290 F. App'x 463, 467 (3d Cir. 2008) (per curiam) (rejecting disabilities claim where inmate alleged "that the prison *ignored* his alleged disabilities in order to justify his placement in the LTSU—not that they placed him in the LTSU because of discriminatory animus based on his alleged mental disabilities.").

[47] *See Faruq v. McCollum*, 545 F. App'x 84, 87 (3d Cir. 2013) ("To state a claim for race- or religion-based discrimination, [plaintiff] needed to show specifically that he received different treatment from that received by other similarly situated inmates." (citing *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003)). "[T]o state a claim for 'class of one' equal protection, a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).

[48] ECF Doc. No. 3 at 12.

[49] *Id.*

[50] *See Perano v. Twp. Of Tilden*, 423 F. App'x 234, 238–39 (3d Cir. 2011) ("Without more specific factual allegations as to the allegedly similarly situated parties, he has not made plausible the

conclusion that those parties exist and that they are like him in all relevant aspects."); *Carson v. Mulvihill*, 488 F. App'x 554, 563 (3d Cir. 2012) (finding equal protection claim not pled where plaintiff failed to "allege facts showing that he was similarly situated to the inmates who received wheelchair footrests, crutches and canes, or that there was no rational basis for his different treatment").

[51] ECF Doc. No. 3 at 13.

[52] *Lavia*, 224 F.3d at 195.

[53] *See Pennhurst*, 465 U.S. at 99-100; *A.W.*, 341 F.3d at 238; *see also Beckett v. Pennsylvania Dep't of Corr.*, 597 F. App'x 665, 667 (3d Cir. 2015) (Eleventh Amendment barred claims for injunctive relief against the DOC and for money damages against the DOC's defendants in their official capacities) (citing *Will*, 491 U.S. at 71).

[54] *See Beckett*, 597 F. App'x at 667 (citing 42 Pa. Cons.Stat. § 8522; *McCool v. Dep't of Corr.*, 984 A.2d 565, 570 (Pa. Commw. Ct. 2009)).

[55] ECF Doc. No. 3 at 13.

[56] Mr. Roman pled all individual Defendants are employed by the Department at SCI Chester. ECF No. 3 at 3-4.

[57] *See* Pennsylvania Const. Art. 1, § 11; 1 Pa. C.S.A. § 2310; 42 Pa. Cons. Stat. § 8522.

[58] *Davis v. Corizon Health, Inc.*, No. 14-1490, 2015 WL 518263, at *9 n. 28 (E.D. Pa. Feb. 9, 2015); *see also McCool v. Dep't of Corr.*, 984 A.2d 565, 571 (Pa. Commw. Ct. 2009); *Williams v. Syed*, 782 A.2d 1090, 1096 (Pa. Commw. Ct. 2001).

[59] *Wilson v. Jin*, 698 F. App'x 667, 673 (3d Cir. 2017) (citing *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1122 (Pa. Super. Ct. 2004)).

[60] *Id.* (quoting *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)).

[61] *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).