**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALEXSANDRO ROMAN** | **:** | **CIVIL ACTION** |
| | **:** | |
| **v.** | **:** | **NO.  19-5204** |
| | **:** | |
| **DR. LITTLE,** *et al.* | **:** | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                    **April 30, 2020**

   A Hispanic man entering state prison with disclosed ongoing medical issues shortly after hospital care *pro se* sues the prison medical professionals for a thirteen-day delay in treating him upon admission to the prison and two prison correctional officers for skipping over him in line at the sick call delaying his treatment for an additional three days.  He pleads telling the medical professionals of his ongoing pain including providing current hospital records upon entering the prison.  He did not describe his medical condition to the prison officers, but he assumed they knew of his pain by the way he walked.  He seeks damages against the medical professionals and prison officers for violating his Eighth Amendment right to be free from deliberate indifference to his medical needs while incarcerated and his Fourteenth Amendment right to equal protection of the law as a Hispanic man.  He also sues the medical professionals for negligence under Pennsylvania law but has yet to obtain a certificate of merit required to proceed.   After parsing through his *pro se* amended Complaint, we deny the medical professionals' motion to dismiss the deliberate indifference and negligence claims.  We dismiss the equal protection claims and the deliberate indifference claim against the prison officers.  Given the effect of present COVID-19 restrictions on meaningfully moving forward on a *pro se* prisoner's civil rights claim, we again refer this case to our volunteer civil rights panel and briefly defer further scheduling, allowing the prisoner to possibly amend to plead more specific facts if he can do so in good faith.

I.     *Pro se* **alleged facts**

From August 1, 2018 through September 2018, prison medical professionals Dr. Little and Physician Assistant Nicholson owed a duty to render medical treatment to Alexsandro Roman then incarcerated at SCI-Chester.[1]  Earlier on August 1, 2018, before entering SCI-Chester,[2] Mr. Roman received treatment for his medical conditions at Hahnemann Hospital and Temple University Medical Hospital, which included prescribed pain medications, magnetic resonance imaging and examinations.[3]  He suffered excruciating back pain from a dislocated disc, a vertebrae infection and arthritis.[4]  Mr. Roman's medical records described his hospital treatment and included orders from hospital doctors for the prison doctors to follow.[5]

Upon admission to SCI-Chester, Mr. Roman told Dr. Little, Physician Assistant Nicholson and prison medical intake staff about the nature and extent of his injuries and medical needs.[6] Mr. Roman also gave his medical records to Dr. Little and Physician Assistant Nicholson.  They reviewed the records.[7]  Dr. Little and Physician Assistant Nicholson could not "properly and appropriately treat [Mr. Roman's] medical conditions" because they failed to have Mr. Roman sign a medical records release authorization.[8]

On August 1, 2018 and the several days following, Mr. Roman personally requested Dr. Little and Physician Assistant Nicholson provide "medications for pain, a cane to walk with, bottom bunk status, and no stairs status."[9]  But despite these repeated requests and their awareness of Mr. Roman's injuries and painful suffering,[10] Dr. Little and Physician Assistant Nicholson refused or neglected to refill Mr. Roman's medications or provide medical assistance.[11]

*Denial of sick-call services and medication.*

While incarcerated, Lieutenant White and Officer Dixon held Mr. Roman under their custody, control, and supervision.[12]  To obtain medical treatment, Mr. Roman scheduled a sick-call appointment and on September 10, 2018, he appeared for sick-call services at the prison medical department where Officer Dixon worked the front desk and Lieutenant White assisted him.[13]  Officer Dixon maintained a list of inmates with scheduled sick-call appointments and would call inmates from the list for treatment.[14]

After "waiting for a long time," Mr. Roman approached Officer Dixon's desk and looked at the list where he discovered his name written at the top and several scratched out inmate names below his.[15]  Officer Dixon skipped Mr. Roman, instead calling inmates placed below him on the list first.[16]  Mr. Roman continued to wait as Officer Dixon called other inmates.[17]  Despite Mr. Roman's need for medical care, apparent "because he could hardly walk,"[18] "Officer Dixon told [Mr. Roman]… no more sick-call services would be available for the day."[19]  In response, Mr. Roman explained to Officer Dixon and Lieutenant White the nature of his injuries, the severity of his pain, and his need for medication and treatment.[20]  But Officer Dixon and Lieutenant White still refused treatment and sent Mr. Roman back to his housing unit.[21]  To remove him from the medical department, Officer Dixon tried to write a misconduct report on Mr. Roman.[22]  As a result of denied treatment, Mr. Roman continued to suffer "extreme and severe physical pain"[23] and "agony for many days."[24]

Mr. Roman later complained of his medical issues to Deputy Superintendent Walls.[25]  Deputy Walls "was able to get [Mr. Roman into] the medical department on September 13, 2018" and prison physicians re-ordered his medications the same day.[26]  After these medications expired, Dr. Little and Physician Assistant Nicholson refused to re-order the medication and Mr.

Roman continued to suffer extreme pain.[27]  Mr. Roman filed grievances and grievance appeals to complain of Dr. Little and Physician Assistant Nicholson's refusal to re-order his medication.[28]

### *Race discrimination.*

Mr. Roman is of Puerto Rican descent and struggles with the English language.[29]  Dr. Little, Physician Assistant Nicholson, Officer Dixon and Lieutenant White treated Mr. Roman "unfairly and in a discriminatory manner in obtaining medical care and his medications based upon [Mr. Roman's] inability to speak English and being of Puerto Rican descent."[30]  Mr. Roman personally observed non-Puerto Rican, English-speaking inmates "treated appropriately at sick call."[31]  Despite Mr. Roman's observations, Officer Dixon "completely denied [Mr. Roman] medical care at sick call due to a bias, prejudice, or retaliation."[32]

## II.    Analysis

Mr. Roman *pro se*[33] sues Dr. Little and Physician Assistant Nicholson, claiming they violated his Eighth Amendment right to be free from deliberate indifference, Fourteenth Amendment right to Equal Protection, and professional negligence.[34]  Mr. Roman alleges Dr. Little and Physician Assistant Nicholson disregarded his medical needs and refused to provide treatment for unconstitutional reasons.  He alleges Dr. Little and Physician Assistant Nicholson treated him "unfairly and in a discriminatory manner in obtaining medical care and his medications based upon [Mr. Roman's] inability to speak English and being of Puerto Rican descent."[35]  Mr. Roman claims to have personally observed non-Puerto Rican, English-speaking inmates "treated appropriately at sick call."[36]

Mr. Roman also sues Officer Dixon and Lieutenant White alleging they knew and deliberately failed to assist in obtaining treatment for Mr. Roman's medical needs when he visited the sick call on September 10, 2018.[37]  Mr. Roman alleges Officer Dixon and Lieutenant

White acted similarly to Dr. Little and Physician Assistant Nicholson by depriving him of medical treatment because of his ethnicity and limited English proficiency.[38]

Dr. Little and Physician Assistant Nicholson move to dismiss Mr. Roman's amended complaint for failure to state a claim.[39]  Officer Dixon and Lieutenant White separately move to dismiss Mr. Roman's amended complaint for failure to state a claim.[40]  Mr. Roman did not respond.

A. **Mr. Roman pleads deliberate indifference against Dr. Little and Physician Assistant Nicholson but fails to plead deliberate indifference against Officer Dixon and Lieutenant White.**

Prisoners have the constitutional right to adequate medical care.[41]  A prisoner claiming deliberate indifference to a serious medical need must plead: "(1)… the defendants were deliberately indifferent to their medical needs and (2)… those needs were serious."[42]

A prison official acts with deliberate indifference if he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[43]  Mere allegations of negligence or malpractice[44] or disagreements about proper medical treatment[45] do not establish deliberate indifference to a serious medical need.  "[P]rison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners."[46]  "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."[47]  Deliberate indifference requires a showing of the defendant medical provider's "obduracy and wantonness" to the plaintiff's medical needs.[48]  Claims for constitutional harms require personal involvement on behalf of the government actor.[49]

Examples of deliberate indifference include when a prison official "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary

5

medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment[;]"[50] and (4) "persists in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.'"[51]   "'[D]eliberate indifference to, and defiance of, explicit medical instructions, resulting in serious and obvious injuries' [also] state[s] a violation of constitutional rights."[52]   But short delays in treatment "unaccompanied by arbitrary or unduly burdensome bureaucratic procedures, and the refusal to summon the medical specialist of the inmate's choice, perform tests or procedures that the inmate desires, or to explain to the inmate the reason for medical action or inaction does not amount to cruel and unusual punishment."[53]

"A medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[54]   A medical need may be considered "serious" if "'unnecessary and wanton infliction of pain' results as a consequence of denial of delay in the provision of adequate medical care."[55]   "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."[56]

> ### 1.      Mr. Roman pleads Dr. Little's and Physician Assistant Nicholson's deliberate indifference.

Mr. Roman alleges Dr. Little and Physician Assistant Nicholson did not provide Mr. Roman with his requested care or the treatment recommended by physicians at Temple University Medical Hospital.   Mr. Roman alleges he personally informed Dr. Little and Physician Assistant Nicholson and prison medical intake staff "about the nature and extent of [his] physical injuries and serious medical needs."[57]   Mr. Roman alleges he gave Dr. Little and

Physician Assistant Nicholson his medical records upon entry to SCI-Chester,[58] which included the treatment Mr. Roman received at Temple University Medical Hospital.[59] Mr. Roman alleges he requested from Dr. Little and Physician Assistant Nicholson "medications for pain, a cane to walk with, bottom bunk status, and no stairs status,"[60] but Dr. Little and Physician Assistant Nicholson disregarded these requests and refused or neglected to refill Mr. Roman's prescriptions.[61]

Dr. Little and Physician Assistant Nicholson counter Mr. Roman alleges no facts they intentionally and unnecessarily subjected him to pain or disregarded an excessive risk to his health or safety.[62] Dr. Little and Physician Assistant Nicholson argue they are entitled to use their best professional judgment on how to best treat inmates and this judgment is not subject to court intervention.[63] Dr. Little and Physician Assistant Nicholson argue they exercised professional judgment because they eventually prescribed medication to Mr. Roman on September 13, 2018.[64]

The issue is not whether the medical professionals will succeed after discovery or trial; we instead review only whether Mr. Roman pleaded deliberate indifference. In *Breeland v. Wanda W.*, Judge Lanzillo recommended dismissal of Mr. Breeland's deliberate indifference claim against two prison nurses.[65] Mr. Breeland fractured his ankle in the afternoon but despite repeated requests could not obtain medical treatment and suffered extreme pain until nighttime.[66] But once the prison nurses personally responded to a medical call for Mr. Breeland, they rendered prompt medical treatment.[67] In less than twenty-four hours, "[Mr.] Breeland was transported to the medical department, admitted to the infirmary, provided with ice, seen by a physician, given pain medication, provided an ACE bandage and crutches, and placed on a [thirty]-day bottom bunk restriction."[68] Judge Lanzillo relied on our Court of Appeals in

*Palakovic v. Wetzel*: "where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."[69]  Judge Lanzillo concluded Mr. Breeland's alleged treatment received from prison nurses "belie an inference of deliberate indifference."[70]

Mr. Roman's claim involves a longer period than the one-day delay of care reviewed in *Breeland*.  Judge Lanzillo recommended dismissal of Mr. Breeland's deliberate indifference claim because he found the prison nurses rendered medical care promptly after they became personally involved.[71]  Once the prison nurses responded, they took several measures to treat Mr. Breeland.[72]  But Mr. Roman alleges Dr. Little and Physician Assistant Nicholson delayed providing him medical treatment.[73]  Mr. Roman alleges, despite providing medical records ordering treatment with repeated requests for treatment, Dr. Little and Physician Assistant Nicholson still did nothing.[74]  Mr. Roman entered the prison on August 1, 2018, but alleges receiving no treatment until September 13, 2018.[75]  When Mr. Roman finally obtained treatment on September 13, 2018, Deputy Walls helped get Mr. Roman into the medical department.[76]  Mr. Roman does not allege either Dr. Little or Physician Assistant Nicholson rendered treatment on September 13, 2018.[77]  When Mr. Roman's September 13, 2018 prescription expired, Dr. Little and Physician Assistant Nicholson allegedly "failed or refused to re-order [Mr. Roman's] medications."[78]

By contrast, Judge Beetlestone in *Shirey v. Ladonne* found Mr. Shirey sufficiently alleged deliberate indifference by prison doctors.[79]  Mr. Shirey alleged a prison doctor disregarded Mr. Shirey's personal requests, as well outside medical professional's instructions, to prescribe Gabapentin to control his joint and nerve pain from Lyme disease.[80]  Mr. Shirey alleged a prison doctor "disregarded explicit instructions from outside medical providers to prescribe…

8

Gabapentin" on three separate occasions.[81]  Judge Beetlestone concluded Mr. Shirey "plausibly allege[d] [the prison doctor] acted with deliberate indifference by denying him Gabapentin and, thus, intentionally interfer[ed] with his prescribed treatment."[82]

Judge Beetlestone found the prisoner plead deliberate indifference by alleging the prison doctors defied or intentionally interfered with treatment prescribed by outside doctors.  Mr. Roman alleges he received medical treatment and examinations at Hahnemann Hospital on August 1, 2018 before arriving at the prison the same day.[83]  Upon arrival, Mr. Roman gave his hospital medical records to Dr. Little and Physician Assistant Nicholson and informed them about the extent and nature of his injuries.[84]  Mr. Roman alleges Dr. Little and Physician Assistant Nicholson "intentionally disregarded Temple University Medical Hospital doctor's medication prescription orders after [Mr. Roman] shared his medical records with Dr. Little and Physician Assistant Nicholson."[85]  As in *Shirey*, Mr. Roman alleges Dr. Little and Physician Assistant Nicholson intentionally interfered or ignored the treatment prescribed by outside hospital doctors.

Mr. Roman alleges a serious medical need because he received hospital treatment before entering the prison and hospital physicians prescribed treatment to continue upon Mr. Roman's incarceration.[86]  Mr. Roman alleges Dr. Little and Physician Assistant Nicholson learned of his medical conditions the day he entered SCI-Chester on August 1, 2018.  Mr. Roman alleges he could not obtain medical treatment for over one month after entering the prison, despite his repeated requests and in prison doctors' defiance of orders from hospital doctors.

At this initial stage, Mr. Roman sufficiently pleaded Dr. Little's and Physician Assistant Nicholson's deliberate indifference.

> ## 2. Mr. Roman fails to plead Lieutenant White's and Officer Dixon's deliberate indifference.

Mr. Roman alleges Lieutenant White and Officer Dixon acted with deliberate indifference towards his serious medical needs.  Mr. Roman alleges serious medical needs for which the hospital doctors treated and prescribed medication.[87]  Lieutenant White and Officer Dixon allegedly knew about Mr. Roman's serious medical needs because Mr. Roman personally informed them about his extreme pain and medical needs on September 10, 2018.[88]  Mr. Roman also alleges his need for medical care "was apparent" to Lieutenant White and Officer Dixon because when they ordered Mr. Roman back to his housing unit from the medical department, Mr. Roman "could hardly walk."[89]  Despite their knowledge, Mr. Roman alleges Lieutenant White and Officer Dixon would not admit Mr. Roman for his scheduled sick-call appointment, leaving Mr. Roman to suffer untreated pain for three days until he could obtain treatment.[90]

Officer Dixon and Lieutenant White counter Mr. Roman failed to plead Eighth Amendment violations.  Officer Dixon and Lieutenant White rely on *Spruill v. Gillis*[91] and *Miller v. Steele-Smith*[92] to argue Mr. Roman's alleged three-day delay in obtaining treatment fails to rise to the level of deliberate indifference.[93]  But their reliance on *Miller* is misplaced, as it evaluates an Eighth Amendment deliberate indifference claim under a summary judgment, not motion to dismiss, standard.[94]

In *Spruill v. Gillis*, our Court of Appeals affirmed dismissal of Mr. Spruill's deliberate indifference claim against a non-medical prison official.[95]  As to the period of time after Mr. Spruill saw medical experts: "If a prisoner is under the care of medical experts… a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."[96] But Mr. Spruill also alleged the prison guard knew of his pain three days before he could obtain treatment from a doctor. Our Court of Appeals affirmed dismissal because Mr. Spruill saw a

nurse, obtaining some minimum level of treatment, after two days, and failed to allege "his condition was so dire and obvious that [the prison official's] failure to summon immediate medical attention" instead of allowing the sick call process to run its course amounted to deliberate indifference.[97]

Our Court of Appeals held Mr. Spruill's condition, which included excruciating back pain causing him to collapse twice, was not so "dire and obvious" to require the prison official to summon immediate medical attention.[98]  Mr. Roman's identical complaint of severe back pain is similarly not so dire and obvious to require Lieutenant White and Officer Dixon to summon immediate medical attention upon hearing of and observing his medical condition while he waited to see medical professionals on a sick call on September 10, 2018.

In *House v. Fisher*, Judge Rambo denied a motion to dismiss an Eighth Amendment failure to protect and deliberate indifference claims because Mr. House pleaded facts allowing the court to reasonably infer a substantial risk of harm and the defendants made that inference and disregarded the risk.[99]  After a suicide attempt, Mr. House *pro se* sued prison officials for their failure to help Mr. House obtain mental health treatment upon learning of his suicidal ideations.[100]  Mr. House repeatedly informed prison employees about "his severe mental illness, which he is diagnosed for depression, which he takes medication for."[101]  Mr. House "explained to [one of the defendants] that he was suicidal but was ignored and that over the next several hours [Mr. House] repeatedly press[ed] his emergency call button and told correctional officers that he was suicidal."[102]  Mr. House alleged prison officials knew Mr. House received treatment from a prison psychologist.[103]  "[Mr.] House allege[d] . . . when he informed corrections officers that he was suicidal they laughed and 'kept telling [him] "to get it over with and hang it up.""'[104] "[Mr.] House also allege[d] that other inmates pressed their emergency buttons to let corrections

11

officers know that [Mr. House] was suicidal but those inmates were ignored."[105]   Judge Rambo concluded Mr. House's "allegations suggest . . . defendants had the requisite culpable state of mind and that they were aware of a substantial risk of harm to [Mr.] House and they ignored that risk."[106]

Mr. House alleged facts allowing Judge Rambo to reasonably infer the prison officials' knowledge of his substantial risk of harm.  Mr. House alleged he repeatedly told prison officials about his suicidal ideations and complained to other inmates who also informed defendant prison officials.   Mr. House alleged prison officials knew he received treatment from a prison psychologist.  Mr. House also alleged the prison officials inferred the existence of a substantial risk of harm because in response to Mr. House's requests and pleas for help, prison officials taunted Mr. House to commit suicide.

We distinguish *House* because Mr. Roman does not plead facts showing Officer Dixon and Lieutenant White possessed facts which may allow us to reasonably infer the existence of a substantial risk of harm nor does Mr. Roman allege they actually drew the inference like the *House* defendants.  Mr. Roman alleges he informed Officer Dixon and Lieutenant White of the seriousness of his medical needs *after* they denied Mr. Roman's sick call appointment.[107]   Only then, Mr. Roman allegedly explained his "extreme physical pain and need[] for medications" and he "urgently needed to be seen by medical staff."[108]   Mr. Roman alleges his need for medical care "was apparent . . . because he could hardly walk," but Officer Dixon and Lieutenant White sent him back to the housing unit anyway.[109]   But Officer Dixon and Lieutenant White sending Mr. Roman back to housing at the end of his scheduled time despite Mr. Roman's near inability to walk does not show Officer Dixon and Lieutenant White possessed facts to infer the existence of a substantial risk of serious harm nor shows Officer Dixon and Lieutenant White drew the

inference their refusal of care would result in a substantial risk of harm.[110]  The only possible plead facts possessed by Officer Dixon and Lieutenant White to infer the existence of a risk of substantial harm came from Mr. Roman's single plea to them on September 10, 2018.[111]  This single fact is distinct from *House* where the defendants possessed facts from several different sources: their knowledge Mr. House previously saw the prison psychologist for mental health treatment, Mr. House's own repeated request and the repeated warnings from other inmates.  The *House* defendants also allegedly responded to Mr. House's pleas for mental health treatment by taunting him: "to get it over with and hang it up."[112]  This alleged statement allowed Judge Rambo to infer the *House* defendants "had the requisite culpable state of mind and that they were aware of a substantial risk of harm to [Mr.] House and they ignored that risk."[113]  Officer Dixon and Lieutenant White sending Mr. Roman back to the housing unit on September 10, 2018 does not similarly show their comprehension of Mr. Roman's medical needs and their accompanying "culpable state of mind."

We dismiss Mr. Roman's deliberate indifference claim against Officer Dixon and Lieutenant White.  Mr. Roman alleges Officer Dixon and Lieutenant White first became personally involved in his constitutional deprivation on September 10, 2018,[114] and their conduct resulted in a three-day delay in treatment.[115]  Mr. Roman alleges he explained his medical needs, but does not allege Officer Dixon and Lieutenant White inferred a serious risk of harm from his explanation.  Mr. Roman would need to allege, as in *House*, Officer Dixon and Lieutenant White knew refusing treatment would expose Mr. Roman to potential substantial harm.[116]

Mr. Roman does not allege Officer Dixon and Lieutenant White acted with deliberate indifference. Should he develop facts able to be plead consistent with Federal Rule, he may move to amend to add this claim.

**B.     We dismiss Mr. Roman's Equal Protection claims for failure to allege purposeful discrimination.**

Mr. Roman claims Dr. Little, Physician Assistant Nicholson, Officer Dixon and Lieutenant White denied him medical treatment because of his Puerto Rican descent and limited English proficiency.[117]

The Equal Protection Clause of the Fourteenth Amendment prohibits a state actor from denying "to any person within its jurisdiction the equal protection of the laws."[118]  To succeed on a section 1983 claim for denial of equal protection, Mr. Roman "must prove the existence of purposeful discrimination,"[119] which requires facts "showing a discriminatory state of mind."[120] Mr. Roman "must demonstrate that [he] receiv[ed] different treatment from that received by other individuals similarly situated."[121]  Mr. Roman must also allege he is "(1) a member of a protected class; (2) similarly situated to members of an unprotected class; and (3) treated differently from members of the unprotected class."[122]

In *Innovative Polymer Technologies, LLC v. Innovation Works, Inc.*, Judge Kelly dismissed the plaintiffs' equal protection claims for their failure to allege purposeful discrimination.[123]  Mr. Jones, a black man and President and CEO of Innovative Polymer Technologies, LLC sued the Pennsylvania Department of Community and Economic Development and two Department officials for their alleged failure, because of Mr. Jones' race, to "provide economic support and professional assistance" to Mr. Jones and his corporation.[124]

In 2004, Mr. Jones sought funding for his corporation through Innovation Works, a non-profit organization "responsible for using and distributing capital provided by the Commonwealth to assist and invest in individual companies selected by a partner's regional board."[125]  Despite providing all required materials, Innovation Works denied Mr. Jones' funding requests three times.[126]  Mr. Jones concluded "his race and/or color" motivated

Innovation Works' failure to deny his funding requests.[127]  Years later, when Mr. Jones learned Innovation Works provided funding to a similar "white-owned business," Mr. Jones asked Innovation Works why he received no support.[128]  Innovation Works proved unhelpful, so Mr. Jones sought assistance from the Department and Department officials, who appointed a Department employee to assist Mr. Jones.[129]  The Department ultimately did not provide Mr. Jones funding.[130]  Mr. Jones sued, alleging the Department officials acted in concert with Innovation Works "'for reasons of race,' and were unwilling to exercise appropriate oversight and supervision to ensure [Innovation Works] did not discriminate on the basis of race when granting funding and assistance."[131]  In dismissing the equal protection claim, Judge Kelly concluded Mr. Jones did not establish purposeful discrimination.[132]  Mr. Jones "fail[s] to set forth facts, again parsed from legal conclusions, to support an inference… the differences in treatment were because of Mr. Jones' race."[133]

In *Wilkins v. City of Philadelphia*, Judge Jones dismissed Mr. Wilkins' equal protection claim for Mr. Wilkins' failure to sufficiently allege purposeful discrimination.[134]  Mr. Wilkins, an African American teenager, partially severed his hand while playing with fireworks. Emergency responder police and firemen refused to escort Mr. Wilkins to the hospital.[135]  Mr. Wilkins sued claiming the police and firemen refused to assist because of his race.[136]  Judge Jones determined "[Mr.] Wilkins' equal protection claim fails… because he alleges no facts to establish… he was treated differently *because of* his race."[137]  "The Complaint merely states, in a conclusory manner, that the Individual Defendants' actions and the City's failure to 'properly train and supervise the activities of the individual police officers and fire department members [were] motivated, in part, by racial bias and animus.'… This is not enough."[138]

In *Green v. Chester Upland School District*, a high school student sued the School District after a trespasser posing as a student entered school property and assaulted him causing multiple injuries.[139]  Judge Quiñones determined the student failed to allege facts showing he suffered purposeful discrimination or disparate treatment because of a protected characteristic.[140] Judge Quiñones reasoned the student's "claims are essentially based on allegations [the School District] failed to protect him from a trespasser's assault. [Mr. Green] has not alleged, however, that the trespasser's assault was targeted at him or others like him because of some protected trait."[141]  Judge Quiñones dismissed the student's equal protection claim for failure to state a claim.[142]

In *Heath v. Shapiro*, Judge Kelly recommended dismissal of Mr. Heath's equal protection claim for his failure to allege purposeful discrimination.[143]  Mr. Heath, a black man, sued the Pennsylvania Attorney General and several employees of the Pennsylvania Attorney General's office, who are all white, for failing to pursue two private criminal complaints he submitted.[144] Judge Kelly described Mr. Heath's equal protection allegations as "wholly insufficient," finding Mr. Heath simply alleged "in nearly identical phrasing that each Defendant acted or failed to act to prosecute his private criminal complaints because of his race."[145]  Considering her duty to "identify any allegations that constitute 'mere conclusory statements' [which] are not entitled to the assumption of truth,[146] Judge Kelly concluded: "Nowhere does [Mr. Heath]… allege facts showing [Defendants] treated [him] differently because of his race… [Mr. Heath] attributes individual intent and characterizes conduct of each Defendant in unsupported conclusory terms that fail to nudge his claims across the line from even conceivable to plausible."[147]

### C.    Mr. Roman fails to allege Dr. Little, Physician Assistant Nicholson, or Lieutenant White violated his Equal Protection rights.

Mr. Roman alleges Dr. Little, Physician Assistant Nicholson and Lieutenant White violated the Equal Protection Clause of the Fourteenth Amendment by "treat[ing] him unfairly and in a discriminatory manner in obtaining medical care and his medications based upon [Mr. Roman's] inability to speak English and being of Puerto Rican descent."[148]  Mr. Roman alleges he "personally observed other inmates . . . being treated appropriately at sick call who spoke English and of a different ethnicity."[149]

Dr. Little and Physician Assistant Nicholson counter Mr. Roman fails to state a claim as his allegations lack detail and are purely speculative.[150]  Dr. Little and Physician Assistant Nicholson argue Mr. Roman's allegations are insufficient to infer discriminatory intent.

Lieutenant White argues Mr. Roman's equal protection claim fails because it is speculative and Mr. Roman fails to allege his similar situation with inmates called for treatment by Officer Dixon.[151]

Mr. Roman alleges facts supporting elements for an equal protection claim.  Mr. Roman alleges membership in a protected class as an individual of Puerto Rican descent,[152] and Mr. Roman allegedly observed non-Puerto Rican inmates "being treated appropriately at sick call."[153]  Mr. Roman alleges he observed non-Puerto Rican inmates receive treatment different from the treatment he received.[154]  But like the plaintiffs in *Green*, *Wilkins* and *Innovative Polymer Technologies*, Mr. Roman fails to allege purposeful discrimination.  The allegation Mr. Roman personally observed English speaking, non-Puerto Rican inmates receive different treatment at sick call[155] is not an allegation Mr. Roman received different treatment "*because of*" his inability to speak English and being of Puerto Rican descent.[156]  As in *Wilkins*, Mr. Roman fails "to allege sufficient facts to 'nudge [his] claims across the line from conceivable to

17

plausible.'"[157] Mr. Roman alleges nothing against Dr. Little, Physician Assistant Nicholson, and Lieutenant White allowing us to infer purposeful discrimination based on his race.  We dismiss these equal protection claims without prejudice should Mr. Roman develop facts to allow him to amend consistent with Rule 11.

> **D.      Mr. Roman fails to allege Officer Dixon violated his Equal Protection rights.**

Like his conclusory allegations against Dr. Little, Physician Assistant Nicholson and Lieutenant White, Mr. Roman similarly alleges Officer Dixon "treated him unfairly and in a discriminatory manner in obtaining medical care and his medications based upon [Mr. Roman's] inability to speak English and being of Puerto Rican descent."[158]  But Mr. Roman alleges Officer Dixon specifically "completely denied [Mr. Roman] medical care at sick call due to bias, prejudice, or retaliation."[159]

Officer Dixon argues Mr. Roman's equal protection claim fails because it is speculative and Mr. Roman fails to allege his similar situation with inmates called for treatment by Officer Dixon.[160]

Like Judge Kelly in *Heath* and Judge Jones in *Wilkins*, we conclude Mr. Roman's "unsupported conclusory terms" fail to sufficiently allege purposeful discrimination and we must dismiss the equal protection claim against Officer Dixon.[161]  Like *Heath*, Mr. Roman attributes individual intent to commit race discrimination to Officer Dixon but alleges no facts to support his conclusion.[162] Like *Wilkins*, it is not enough for Mr. Roman to simply allege Officer Dixon acted unconstitutionally "due to a bias, prejudice, or retaliation."[163]  Mr. Roman must allege sufficient facts "to plausibly suggest [Officer Dixon's] discriminatory state of mind."[164]

      **E.**      **We defer dismissing Mr. Roman's professional negligence claim for his failure to file a Certificate of Merit required by Pennsylvania law.**

Mr. Roman asserts claims of negligence and gross negligence against Dr. Little and Physician Assistant Nicholson.[165]   Countering they are "health care provider[s]" under Pennsylvania law,[166] Dr. Little and Physician Assistant Nicholson move to dismiss these claims citing Pennsylvania Rule of Civil Procedure 1042.3.[167]

Rule 1042.3 is a procedural rule for medical malpractice and professional negligence cases which requires Mr. Roman file a signed certificate of merit within sixty days of filing his complaint.[168]   A certificate of merit is a statement written by an appropriate licensed professional with expert qualifications, stating "there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm…"[169] or a similar written statement claiming the defendant professional "deviated from an acceptable professional standard."[170]   The Rule requires Mr. Roman file separate certificates of merit for each Dr. Little and Physician Assistant Nicholson.[171]   Failure to file a certificate of merit is fatal to a professional negligence claim.[172]   Should Mr. Roman fail to file a certificate of merit, Dr. Little and Physician Assistant Nicholson may move for entry of judgment of *non pros*, which is effectively the same as dismissal without prejudice.[173]   But before Dr. Little and Physician Assistant Nicholson may so move, they must notice Mr. Roman of their intent to enter judgment of *non pros* "no sooner than the thirty-first day after the filing of the complaint."[174]   Pennsylvania Rule 1042.3 applies in federal court.[175]   In the context of federal motion practice, notice may also be provided by a motion to dismiss.[176]

We find guidance from Judge Kane's analysis in *Harris v. Hershey Medical Center*: "any potential state law claim for medical negligence . . . must be dismissed for failure to file a

certificate of merit pursuant to Pennsylvania Rule of Civil Procedure 1042.3(a)."[177]   Mr. Harris *pro se* sued a nurse for medical negligence but he did not file a certificate of merit under the Rule.[178]   The nurse moved to dismiss and Mr. Harris filed neither a certificate of merit nor a move for an extension to do so.[179]   Judge Kane dismissed Mr. Harris' medical negligence claim, holding Mr. Harris' *pro se* status did not excuse him from the certificate of merit requirement.[180]

Mr. Roman sued on November 4, 2019 and has yet to file a certificate of merit.[181]   Mr. Roman's sixty-day deadline expired on January 3, 2020.   Dr. Little and Physician Assistant Nicholson sent Mr. Roman notice of their intent to enter judgment of *non pros* on March 12, 2020.[182]   In response to the March 12, 2020 notice and March 13, 2020 motion to dismiss, Mr. Roman has filed neither a certificate of merit nor has he moved for an extension to do so. To our knowledge, he is serving a prison sentence during the COVID-19 pandemic.   If he is in prison, he does not have the ability to connect with physicians while in prison addressing the COVID-19 pandemic.[183]

Because he is a *pro se* litigant incarcerated while the prison officers protect his health from a COVID-19 outbreak and necessarily affect his ability to communicate, we defer dismissing Mr. Roman's professional negligence claims.   We will address the professional negligence claims at either the Rule 16 conference once our Clerk of Court can schedule a conference with an incarcerated man or during discovery. In the end, Mr. Roman must now be awae Pennsylvania law does not allow medical malpractice cases to proceed absent a certificate of merit.[184]   We are only deferring to allow him to address this deficiency in light of the COVID-19 pandemic's effect on service and progressing while in prison.

## III.      Conclusion

We grant Dr. Little and Physician Assistant Nicholson's motion to dismiss Mr. Roman's equal protection claim for failure to state a claim.  We deny Dr. Little and Physician Assistant Nicholson's motion to dismiss Mr. Roman's deliberate indifference claims.  We deny the motion to dismiss Mr. Roman's professional negligence claims against Dr. Little and Physician Assistant Nicholson subject to being renewed after affording Mr. Roman a realistic opportunity to comply with Pennsylvania Rule of Civil Procedure 1042.3.

We grant Officer Dixon and Lieutenant White's motion to dismiss without prejudice as Mr. Roman has not stated a claim against either of them for deliberate indifference or violating his equal protection rights.

As Mr. Roman proceeds *pro se*, we grant him leave to amend to plead his federal claims and refer this case to our volunteer civil rights Panel of qualified attorneys who may be able to assist Mr. Roman, the parties, and this Court, in resolving the claims.

---

[1] ECF Doc. No. 9 at ¶¶ 1-2.

[2] *Id*. at ¶ 7.

[3] *Id*. at ¶¶ 5, 7.

[4] *Id*. at ¶¶ 1, 4, 10.

[5] *Id*. at ¶¶ 7, 17.

[6] *Id*. at ¶¶ 8-9.

[7] *Id*. at ¶ 7.

[8] *Id*. at ¶ 17.

[9] *Id*. at ¶ 10.

[10] *Id*. at ¶¶ 10-11.

[11] *Id.* at ¶ 19.

[12] *Id.* at ¶ 3.

[13] *Id.* at ¶¶ 12-13.

[14] *Id.* at ¶ 12.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* at ¶ 14.

[19] *Id.* at ¶ 12.

[20] *Id.* at ¶ 14.

[21] *Id.*

[22] *Id.* at ¶ 12.

[23] *Id.*

[24] *Id.* at ¶ 15.

[25] *Id.*

[26] *Id.*

[27] *Id.* at ¶ 19.

[28] *Id.*

[29] *Id.* at ¶¶ 4, 18.

[30] *Id.* at ¶ 18.

[31] *Id.*

[32] *Id.*

[33] "Despite *Iqbal*'s heightened pleading requirements, the district court must be more flexible in its interpretation of *pro se* pleadings." *Boyer v. Mohring*, 994 F. Supp. 2d 649, 654 (E.D. Pa. 2014); *see Higgs v. Attorney General of the United States*, 655 F.3d 333, 339 (3d Cir. 2011), *as amended* (September 19, 2011) ("[W]hen presented with a *pro se* litigant, we 'have a special obligation to construe his complaint liberally.'" (quoting *United States v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999))).

[34] ECF Doc. No. 9 at 11-12.  On November 4, 2018, Mr. Roman *pro se* sued and moved to proceed *in forma pauperis*.  We granted his motion. ECF Doc. Nos. 1, 3.  On December 4, 2018, under 28 U.S.C. § 1915(e)(2)(B)(ii), we dismissed with prejudice Mr. Roman's civil rights official capacity claims against all Defendants, his civil rights claims against the Pennsylvania Department of Corrections, and his Americans with Disabilities Act claims against individual defendants.  We dismissed without prejudice Mr. Roman's civil rights claims against Lieutenant White and Officer Dixon in their individual capacities, equal protection claims, Americans with Disabilities Act claims against the Department of Corrections; medical negligence claims against Lieutenant White and Officer Dixon and state law claims.  We granted Mr. Roman leave to file an amended complaint.  ECF Doc. No. 6.

[35] ECF Doc. No. 9 at ¶ 18.

[36] *Id*.

[37] *Id*. at ¶¶ 12, 14.

[38] *Id*. at ¶ 18.

[39] ECF Doc. No. 21.  When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiffs complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant."  *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)).  To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must tak[e] note of the elements [the] plaintiff must plead to state a claim;" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  *Connelly v. Lane Construction Corporation*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[40] ECF Doc. No. 26.

[41] *City of Revere v. Massachusetts General Hospital,* 463 U.S. 239, 244 (1983) (holding Due Process rights of a pretrial detainee are "at least as great as the Eighth Amendment protections available to a convicted prisoner"); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (finding "[a]cts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" violate the Eighth Amendment right to be free from cruel an unusual punishment).

[42] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

[43] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

[44] *Edwards v. Northampton County*, 663 F. App'x 132, 137 (3d Cir. 2016); *see Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) ("Allegations of medical malpractice are not sufficient to establish a Constitutional violation").

[45] *Spruill*, 372 F.3d at 235 (citing *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

[46] *Durmer v. O'Carroll*, 991 F.2d 64, 67 (citing *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)).

[47] *Pearson v. Prison Health Serv*., 850 F.3d 526, 535 (3d Cir. 2017) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990)).

[48] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

[49] *Evancho v. Fisher*, 423 F. 3d 347, 353 (3d Cir. 2005).

[50] *Rouse*, 182 F.3d at 197.

[51] *Id*. at 197 (quoting *White v. Napolean*, 897 F.2d 103, 109-11 (3d Cir. 1990)).

[52] *White*, 897 F.2d at 110 (citing *Martinez v. Mancusi*, 443 F.2d 921, 925 (2d Cir. 1970)).

[53] *Estien v. Showalter*, No. 13-2474, 2017 U.S. Dist. LEXIS 163483, at *56 (M.D. Pa. Sept. 28, 2017).

[54] *Lanzaro*, 834 F.2d 326 at 347 (internal citations omitted).

[55] *Id*. (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

[56] *Estelle*, 429 U.S. at 104-05.

[57] ECF Doc. No. 9 at ¶¶ 8-9.

[58] *Id.* at ¶ 7.

[59] *Id.* at ¶ 5.

[60] *Id.* at ¶ 10.

[61] *Id.* at ¶¶ 10, 19.

[62] ECF Doc. No. 21 at 8.

[63] *Id.* at 9.

[64] *Id.* We disagree with Dr. Little and Physician Assistant Nicholson's argument they exercised professional medical judgment on September 13, 2018.  Mr. Roman alleges Deputy Walls assisted his admittance to the medical department where he obtained prescriptions and treatment. *Id.* at ¶ 15.  Mr. Roman does not allege either Dr. Little or Physician Assistant Nicholson assisted in any way on September 13, 2018.

[65] *Breeland v. Wanda W.*, No. 17-281, 2020 WL 502672 at *7 (W.D. Pa. Jan. 15, 2020).

[66] *Id.* at *3-4.

[67] *Id.* at *10-11.

[68] *Id.* at *11.

[69] *Id.* (quoting *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017)).

[70] *Id.*

[71] *Id.* at *10.

[72] *Id.*

[73] ECF Doc. No. 9 at ¶ 11.

[74] *Id.*

[75] *Id.* at ¶¶ 7, 15.

[76] *Id.* at ¶ 15.

[77] *Id.* at ¶¶ 11, 15.

[78] *Id.* at ¶ 19.

[79] *Shirey v. Ladonne*, No. 18-4960, 2019 WL 1470863, at *6-7 (E.D. Pa. Apr. 3, 2019).

[80] *Id.* at *7.

[81] *Id.*

[82] *Id.*

[83] ECF Doc. No. 9 at ¶ 7.

[84] *Id.* at ¶¶ 8-9.

[85] *Id.* at ¶ 17.

[86] *Id. See Lanzaro*, 834 F.2d at 347 ("A medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment").

[87] ECF Doc. No. 9 at ¶ 15.

[88] *Id.* at ¶ 14.

[89] *Id.*

[90] *Id.* at ¶¶ 12-15.

[91] *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004).

[92] *Miller v. Steele-Smith*, 713 F. App'x 74, 79-80 (3d Cir. 2017).

[93] ECF Doc. No. 26 at 9.

[94] *Miller*, 713 F. App'x at 78-79.

[95] *Spruill*, 372 F.3d at 237.

[96] *Id.* at 236.

[97] *Id.* at 237 (Our Court of Appeals found Mr. Spruill received a "minimal measure of medical attention" because he signed up for sick-call and saw an unidentified nurse the following day. Mr. Spruill also failed to allege "his condition was so dire and obvious that [a prison doctor's] failure to summon immediate medical attention on May 4 (and to instead let the sick call process run its course) amounted to deliberate indifference.").

[98] *Id.* at 223-224, 237.

---

[99] *House v. Fisher*, No. 14-2133, 2016 WL 538648, at *5-6 (M.D. Pa. Feb. 11, 2016).  Failure to protect and deliberate indifference are analyzed under the same framework set out in *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

[100] *Id.* at *5.

[101] *Id.* at *3.

[102] *Id.*

[103] *Id.*

[104] *Id.*

[105] *Id.*

[106] *Id.* at *5.

[107] ECF Doc. No. 9 at ¶ 14.

[108] *Id.*

[109] *Id.*

[110] *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

[111] ECF Doc. No. 9 at ¶ 14.

[112] *House*, No. 14-2133, at *3, 5.

[113] *Id.* at *5.

[114] ECF Doc. No. 9 at ¶ 12.

[115] *Id.* at ¶ 15.

[116] *See Farmer v. Brennan*, 511 U.S. 825, 838 (1994) ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment" under the Eighth Amendment).

[117] ECF Doc. No. 9 at ¶ 18.

[118] U.S. CONST. amend. XIV, § 1.

---

[119] *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990)); *see also Zappan v. Pa. Bd. of Probation and Parole*, 152 F. App'x 211, 219 (3d Cir. 2005) ("To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, a plaintiff must prove the existence of purposeful discrimination").

[120] *Wilkins v. City of Philadelphia*, No. 16-5926, 2017 WL 3263891, at *4 (E.D. Pa. Jul. 31, 2017) (quoting *Iqbal*, 556 U.S. at 680-83)).

[121] *Blunt*, 767 F.3d at 273 (quoting *Andrews*, 895 F.2d at 1478.

[122] *Green v. Chester Upland Sch. Dist.*, 89 F. Supp. 3d. 682, 693 (E.D. Pa. 2015), *aff'd sum nom A.G. v. Chester Upland Sch. Dist.*, 655 F. App'x 125 (3d Cir. 2016) (quoting *Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002)).

[123] *Innovative Polymer Technologies, LLC v. Innovation Works, Inc.*, No. 17-1385, 2018 WL 1701335, at *8 (W.D. Pa. Apr. 6, 2018).

[124] *Id*. at *1.

[125] *Id*.

[126] *Id*. at *2.

[127] *Id*.

[128] *Id*.

[129] *Id*.

[130] *Id*.

[131] *Id*.

[132] *Id*. at *8.

[133] *Id*.

[134] *Wilkins v. City of Philadelphia*, No. 16-5926, 2017 WL 3263891, at *4 (E.D. Pa. Jul. 31, 2017).

[135] *Id*. at *1.

[136] *Id*. at *2.

---

[137] *Id.* at *4.

[138] *Id.*

[139] *Green v. Chester Upland Sch. Dist.*, 89 F. Supp. 3d. 682, 686-87 (E.D. Pa. 2015), *aff'd sum nom A.G. v. Chester Upland Sch. Dist.*, 655 F. App'x 125, 129 (3d Cir. 2016).

[140] *Id.* at 693.

[141] *Id.*

[142] *Id.* at 694.

[143] *Heath v. Shapiro*, No. 19-435, 2020 U.S. Dist. LEXIS 36700, at *20-21 (W.D. Pa. Mar. 2, 2020).

[144] *Id.* at *2-3.

[145] *Id.* at *20.

[146] *Id.* (citing *Iqbal*, 556 U.S. at 678-81).

[147] *Id.* at *20.

[148] ECF Doc. No. 9 at ¶ 18.

[149] *Id.*

[150] ECF Doc. No. 21 at 11.

[151] ECF Doc. No. 26 at 9.

[152] ECF Doc. No. 9 at ¶ 18. *See Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002) (holding race is a protected class in the Fourteenth Amendment Equal Protection context).

[153] ECF Doc. No. 9 at ¶ 18.

[154] *Id.*

[155] *Id.*

[156] *See Wilkins v. City of Philadelphia*, No. 16-5926, 2017 WL 3263891, at *4 (E.D. Pa. Jul. 31, 2017).

[157] *Id.* at *5.

[158] ECF Doc. No. 9 at ¶ 18.

[159] *Id.*

[160] ECF Doc. No. 26 at 9.

[161] *Heath v. Shapiro*, No. 19-435, 2020 U.S. Dist. LEXIS 36700, at *20 (W.D. Pa. Mar. 2, 2020).

[162] ECF Doc. No. 9 at ¶ 18.

[163] *See Wilkins v. City of Philadelphia*, No. 16-5926, 2017 WL 3263891, at *4 (E.D. Pa. Jul. 31, 2017).

[164] *Id.* (citing *Iqbal*, 556 U.S. at 680-83).

[165] ECF Doc. No. 9 at ¶ 20.

[166] ECF Doc. No. 21 at 13.

[167] Pa. R.C.P. 1042.3.

[168] *Id.* at (a).

[169] *Id.* at (a)(1).

[170] *Id.* at (a)(2).

[171] *Id.* at (b)(1).

[172] *See Harris v. Hershey Medical Center*, No. 08-843, 2009 WL 2762732, at *12-22 (M.D. Pa. Aug. 27, 2009) (Mr. Harris's failure to provide a certificate of merit proved fatal to his state law medical negligence claim but not his Eighth Amendment deliberate indifference claim).

[173] *Id.* at *7 (citing *Stroud v. Abington Memorial Hospital*, 546 F.Supp.2d 238, 250 (E.D. Pa. 2008)).

[174] Pa. R.C.P. 1042.6(a).

[175] *See, e.g.*, *Iwanejko v. Cohen & Grigsby, P.C.*, 249 F. App'x 939, 944 (3d Cir. 2007).

[176] *Harris*, No. 08-843, at *7.

[177] *Id.*

[178] *Id.* at *6.

---

[179] *Id.* at *7.

[180] *Id.*

[181] ECF Doc. No. 3.

[182] ECF Doc. No. 21 at 14.

[183] Mr. Roman has not changed his address on our docket or otherwise advised us of a change in address.  We will continue to presume he remains incarcerated at the address on the docket.

[184] Pa. R.C.P. 1042.3; *see Harris*, No. 08-843, at *12-22.