**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALEXSANDRO ROMAN** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 19-5204** |
| | : | |
| **DR. LITTLE,** *et al.* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                    **February 26, 2021**

  A man recently released from state custody seeking to challenge his medical care while incarcerated must adduce evidence of the medical professionals' negligence or deliberative indifference to proceed on his claims against them. We earlier found he barely alleged pro se claims of deliberative indifference and medical negligence and allowed him to proceed into discovery. He elected not to participate in discovery. He adduced no evidence of the medical professionals' deviation from the standard of care or deliberate indifference to his medical needs while incarcerated. The adduced evidence is to the contrary. The evidence confirms the man received repeated medical treatment at every turn. The medical professionals in the facilities did not heal all of his medical ailments but there is no evidence of deliberate indifference or providing medical treatment below a standard of care. The medical professionals adduce substantial amount of uncontradicted evidence demonstrating repeated care including outpatient testing and monitoring and modification of prescriptions. We grant the medical professionals' uncontested motion for summary judgment as the extensive record confirms there are no genuine issues of material fact and judgment is warranted as a matter of law on the recently released man's claims for deliberative indifference and medical negligence.

I.      **Adduced facts**[1]

The Commonwealth recently released Alexsandro Roman from state custody. He is a 39-year-old Philadelphia resident. His medical history includes a series of ailments, including allergies to several antibiotic medications, addiction, and chronic pain caused by spinal degeneration.

### *Mr. Roman's pre-incarceration medical history.*

Mr. Roman sought treatment at Temple University Hospital in August 2017 for severe chronic back pain, a persistent cough, and multiple episodes of vomiting.[2] Doctors took an MRI, which revealed Mr. Roman suffered from scoliosis (sideways curvature of the spine) with multilevel lumbar spondylosis (spinal degeneration) possibly as a result of discitis (inflammation of vertebrae discs) or osteomyelitis (bone infection).[3] His treating physicians consulted with infectious disease experts who determined Mr. Roman did not require antibiotics because he did not have an active infection.[4] The doctors noted Mr. Roman had a history of heroin, cocaine, marijuana, and K2 use.[5] They prescribed him a ten-day supply of Baclofen, a drug used to treat muscle pain and spasms, and a seven-day supply of Benzonatate, a cough suppressant.[6]

About a year later, Mr. Roman and his parole officer had a physical altercation during which they both fell down steps.[7] Emergency responders brought Mr. Roman to Hahnemann Hospital.[8] The doctors noted Mr. Roman had a small hematoma and laceration above his eyebrow and minor abrasions on his knees.[9] Mr. Roman told the doctors at Hahnemann about his chronic back pain.[10] The doctors ordered an MRI, which revealed several issues with Mr. Roman's spine, specifically: (1) degenerative enhancement adjacent to the L2-L3 endplates; (2) reversal of cervical lordosis and grade 1 retrolisthesis of L2 on L3; (3) mild multilevel cervical spondylosis most prominent at C3-C4 with effacement of the ventral thecal sac;

(4) multilevel lumbar spondylosis most prominent at L2-L3 with mild spinal canal stenosis and bilateral neural foraminal narrowing; and, (5) retro cerebellar arachnoid cyst or mega cisterna magna.[11] The MRI did not reveal an infection.[12] The doctors prescribed Naproxen, a pain medication, and Baclofen, and then released Mr. Roman into police custody.[13]

### Mr. Roman seeks medical treatment while incarcerated at SCI Chester.

Immediately after his discharge from Hahnemann Hospital, Mr. Roman began a period of incarceration at SCI Chester on August 2, 2018.[14] On admission, he received a chest x-ray to ensure he did not have tuberculosis before entering the general prison population.[15]

The facility's medical professional Dr. Paul Little prescribed Mr. Roman the two medications prescribed by the treating physicians at Hahnemann (Baclofen and Naproxen) three days after Mr. Roman entered SCI Chester.[16] Beginning that same day, Mr. Roman received twice daily doses of the prescribed medications, which continued throughout August 2018.[17] Mr. Roman began experiencing symptoms of an infection in his right leg on August 5, 2018.[18] He presented for sick call ten days later on August 15, 2018, and Physician Assistant John Nicholson examined him.[19] There is no evidence he sought treatment for his leg before August 15, 2018. Physician Assistant Nicholson noted Mr. Roman did not have a fever, but he did have a firm, red, warm, and tender abrasion on his left leg.[20] He also noted Mr. Roman walked with an antalgic gait, or limp.[21] Physician Assistant Nicholson diagnosed Mr. Roman with cellulitis/abscess, and prescribed two antibiotics, Bactrim and Clindamycin.[22] He asked Mr. Roman to appear at sick call for wound care once a day for the next two weeks.[23] Finally, he issued Mr. Roman an elevator pass.[24]

On August 17, 2018, Mr. Roman returned to sick call because he had developed rashes, welts, and hives on his hands and lips.[25] Physician Assistant Nicholson, believing Mr. Roman's

symptoms resulted from an allergic reaction to the Bactrim or Clindamycin, prescribed Benadryl and Doxycycline, a different antibiotic, and discontinued the Bactrim and Clindamycin.[26] Physician Assistant Nicholson also took a wound culture from the rash on his hands and instructed Mr. Roman to return if his condition worsened.[27] There is no evidence Mr. Roman told the medical staff of back pain or reported issues with his prescribed pain medication.

Mr. Roman appeared for his wound care two days later on August 19, 2018.[28] The treating nurse noted Mr. Roman had popped his wound despite his instructions not to touch it.[29] She further noted Mr. Roman requested she treat "other areas," but does not specify what type of treatment Mr. Roman had requested.[30] She instructed him he would need to follow up with sick call for evaluation with a doctor.[31]

Mr. Roman returned to sick call three days later on August 22, 2018, and Dr. Little reviewed the results of his wound culture, which revealed Mr. Roman had tested positive for Methicillin-resistant Staphylococcus aureus, or MRSA.[32] Dr. Little determined Mr. Roman's prescribed Doxycycline is an appropriate treatment for the MRSA, and he instructed Mr. Roman to return to sick call in one week for a follow up appointment.[33]

### The professionals document Mr. Roman's housing restrictions.

On August 23, 2020, Nurse Practioner Lola Skinner and Registered Nurse Tanisha Davis each prepared transfer health information for Mr. Roman, but it is not clear whether the facility transferred Mr. Roman at this time. While Registered Nurse Davis's record shows the facility planned to transfer Mr. Roman to "ATA," Nurse Practitioner Skinner's transfer record shows the facility planned to transfer Mr. Roman to "Philadelphia County."[34] The two documents also differ in their account of Mr. Roman's disability and housing restrictions. While Registered Nurse Davis notes Mr. Roman has no significant medical history, no dietary or housing

restrictions, and no physical disabilities or limitations, Nurse Practioner Skinner offers a slightly different picture.[35] Under "significant medical history," she notes Mr. Roman has back pain, a Thyroid nodule, pain in his limbs, mild intermittent insomnia disorder, cellulitis/abscess, and a history of allergic reaction.[36] Under "Restrictions (Dietary, Housing, Employment), she listed "Ground Level," "Lower Bunk," and "Mobility Impaired," and under "Physical Disabilities/Limitations," she listed "Back Pain" and "Mobility Impaired."[37]

### Dr. Little and Physician Assistant Nicholson renew Mr. Roman's pain medication, order an x-ray, and schedule an MRI.

Mr. Roman's pain medication prescriptions expired on September 2 and September 3, 2018.[38] There is no evidence Mr. Roman sought a renewal of his pain medication or other medical treatment between September 2 and September 13, 2020. Mr. Roman saw Physician Assistant Nicholson on September 13, 2018.[39] Physician Assistant Nicholson observed Mr. Roman's apparent discomfort and limited range of motion, reviewed his medical records, and renewed Mr. Roman's prescriptions for Baclofen and Naproxen.[40] He also prescribed a third pain medication, Trileptal, and ordered a spinal x-ray.[41] He further instructed Mr. Roman to return to sick call as needed.[42]

Mr. Roman underwent the spinal x-ray five days later on September 18, 2020.[43] The x-ray revealed multiple issues, and the treating radiologist recommended Mr. Roman receive an MRI for further evaluation.[44] On reviewing these results, Dr. Little recommended to Collegial Review, a committee of off-site doctors who review requests for non-emergency medical care made by prison clinicians, Mr. Roman receive an MRI.[45] He also instructed Mr. Roman to return to sick call in two weeks for a follow-up.[46] Collegial Review accepted Dr. Little's recommendation two days later on September 20, 2018.[47]

Mr. Roman returned to sick call on October 4, 2018, complaining of lower back pain and requesting a refill of his medications.[48] Physician Assistant Nicholson renewed his pain medication and also issued an order allowing Mr. Roman to have a cane for six months.[49]

A few days later, on October 8, 2018, Mr. Roman returned to sick call and saw Dr. Little. He reported his pain had not improved despite his three prescribed pain medications.[50] Dr. Little prescribed Tylenol #3—a narcotic pain reliever combining Acetaminophen with Codeine—as needed until Mr. Roman could undergo an MRI and told Mr. Roman to follow-up in one month.[51] Two days later on October 10, 2018, Dr. Roman put Mr. Roman on a medical hold so the facility would not transfer him while he awaited his MRI.[52]

Mr. Roman returned to sick call just over a week later on October 19, 2018, complaining of a rash on his right arm.[53] Physician Assistant Nicholson noted the rash appeared to be contact dermatitis, took a biopsy, and ordered a corticosteroid cream to treat the rash.[54] There is no evidence they discussed Mr. Roman's back pain.[55]

Physician Assistant Nicholson prescribed Doxycycline and renewed Mr. Roman's prescriptions for Baclofen and Naproxen five days later.[56] He also instructed Mr. Roman to appear for daily wound care from October 25 to October 30, 2018.[57] The following day, a block officer called a nurse about lesions on Mr. Roman's arm.[58] The nurse cleaned and dressed the lesions, took his vitals, and administered antibiotics.[59] Mr. Roman returned the next day, and a different nurse noted the lesions appeared to be getting worse.[60] She contacted Dr. Little who ordered Mr. Roman be transferred to the Crozer-Chester Center's emergency room for further treatment.[61] Dr. Little wrote in his progress report Mr. Roman had not been taking the antibiotics prescribed to him, causing the infection to worsen.[62] He thus ordered Mr. Roman to be placed in the infirmary following his return from the hospital.[63]

The hospital discharged Mr. Roman on October 30, 2018, and Dr. Little ordered him to the infirmary for 23-hour observation and treatment.[64] Dr. Little discontinued the two topical creams he had prescribed and the Doxycycline.[65] He then prescribed two different topical ointments and renewed the prescriptions for Baclofen, Naproxen, Trileptal, and Tylenol #3.[66]

Mr. Roman received treatment for the abscesses on his arm on October 31 and November 1, 3, 4, 9, 11, 13, 15, 16, 17, 18, 19, 20, 23 and 24, 2018.[67]

### The Commonwealth transferred Mr. Roman to Philadelphia County Prison.

The Bureau of Prisons transferred Mr. Roman to Philadelphia County Prison at the end of November 2018.[68] He transferred with a cane and with a housing restriction requiring a ground level, bottom bunk housing assignment.[69]

Mr. Roman reported to sick call on December 3, 2018 to refill his pain medication.[70] Physician Assistant Nicholson renewed the Naproxen and Tylenol #3 and instructed him to return.[71] He did not renew the Trileptal prescription current through December.[72]

Mr. Roman returned two weeks later to request a refill of his Baclofen. Physician Assistant Nicholson refilled the prescription.[73] A week later, on December 18, 2018, Mr. Roman asked when he would receive the MRI.[74] Physician Assistant Nicholson assured him he would have the MRI soon.[75]

Mr. Roman underwent the MRI on December 26, 2018.[76] Physician Assistant Nicholson renewed Mr. Roman's prescriptions for Tylenol #3 and Trileptal two days later on December 28, 2018.[77]

Dr. Little received the results from Mr. Roman's MRI in early January 2019 and requested a consult from a neurosurgeon at Temple on January 11, 2019.[78] The regional medical

director approved the request two weeks later and scheduled an appointment for Mr. Roman for March 6, 2019.[79]

Mr. Roman came to sick call on January 25, 2019 requesting to be placed on ground level housing.[80] It is not clear from the record why or when Mr. Roman's previous ground level housing accommodation lapsed.  Physician Assistant Nicholson updated his medical records to renew this accommodation.[81] Physician Assistant Nicholson renewed Mr. Roman's prescriptions for Baclofen and Tylenol #3 on January 28, 2019.[82]  He did not renew the prescriptions for Baclofen and Naproxen because they were current.[83]

A few days later on February 1, 2019, Mr. Roman returned to sick call to ask whether the facility approved his neurosurgery appointment.[84] During the appointment, Physician Assistant Nicholson conducted a physical exam and gave him a back brace.[85]

Mr. Roman saw Dr. Little on February 18, 2019, and Dr. Little walked him through his MRI results and told him he would have a neurosurgery consultation soon.[86] Mr. Roman reported continued pain.[87] Dr. Little doubled Mr. Roman's prescribed dose of Trileptal, and instructed Mr. Roman to return for a follow up in two to three weeks.[88] A few days later, a nurse renewed the order for Mr. Roman to use a cane.[89] On February 25, 2019, Physician Assistant Nicholson renewed Mr. Roman's prescriptions for Tylenol #3 and Baclofen, and noted his other pain reliever prescriptions were current.[90] On March 1, 2019, Physician Assistant Nicholson renewed Mr. Roman's elevator pass.[91]

### *A Temple University Hospital neurosurgeon performs a consultative examination.*

Mr. Roman had a consult with Dr. Bong-Soo Kim at Temple Neurosurgery on March 6, 2019.[92] Dr. Kim recommended physical therapy and pain management as treatment.[93] If this did

not work, Dr. Kim advised Mr. Roman he may need surgical intervention, but before surgery, he would need a bone scan and an electromyography.[94]

Less than a week later on March 12, 2019, Physician Assistant Nicholson renewed Mr. Roman's prescription for Tylenol #3, but decreased the dose.[95] He also added Cymbalta—an antidepressant with pain reliving properties—to Mr. Roman's regimen.[96] Mr. Roman reported to sick call the next day, expressing frustration his Tylenol #3 had been reduced without his knowledge.[97] He returned again the following day to ask about his new prescription for Cymbalta.[98] Physician Assistant Nicholson explained the changes to his medication and wrote a request to Dr. Little for Mr. Roman to begin physical therapy.[99] Dr. Little approved the request four days later.[100] The following day, Physician Assistant Nicholson increased Mr. Roman's dose of Baclofen from twice a day to three times a day.[101] Mr. Roman's prescription for Tylenol #3 expired on March 25, 2019, but his prescriptions for Baclofen, Naproxen, Trileptal, and Cymbalta continued.[102]

In the first week of April 2019, Mr. Roman reported to sick call asking to speak to Dr. Little about his back pain and requesting renewals of his medications.[103] Physician Assistant Nicholson performed an exam and renewed his prescriptions for Baclofen, but noted Mr. Roman's other prescriptions were current.[104]

About two weeks later, Mr. Roman saw Dr. Little to discuss his pain medications. Mr. Roman wanted Dr. Little to renew the Tylenol #3 because he was not tolerating the Cymbalta and did not think the Trileptal was working.[105] As Tylenol #3 is an opiate, Dr. Little was not willing to renew the Tylenol #3 prescription.[106] But he added Neurontin, another pain medication, and discontinued the Cymbalta.[107]

Mr. Roman returned for his follow up with Dr. Little on May 20, 2019. and reported minimal improvement in his pain.[108] Mr. Roman's prescriptions for Baclofen, Naproxen, Trileptal, and Neurontin were all current.[109] Four days later, Dr. Little prescribed Mr. Roman Tylenol #3.[110]

Mr. Roman went to sick call less than two weeks later because he had a rash on his arm.[111] Physician Assistant Nicholson prescribed Prednisone and Triamcinolone cream and told Mr. Roman to return to sick call if the condition did not improve or worsened.[112]

Mr. Roman transferred to SCI Rockview in June 2019, where he remained for the duration of his sentence.[113] Neither Dr. Little nor Physician Assistant Nicholson provided medical treatment to Mr. Roman after his transfer.  Mr. Roman has since been released.

## II.    Analysis

Mr. Roman filed an amended Complaint in December 2019, asserting negligence, deliberate indifference, and equal protection claims against Dr. Little and Physician Assistant Nicholson and two prison officials.[114] We dismissed all claims against the two prison officials and the equal protection claims against Dr. Little and Physician Assistant Nicholson, but we allowed the professional negligence and deliberate indifference claims against Dr. Little and Physician Assistant Nicholson to proceed to discovery.[115] We explained Dr. Little and Physician Assistant Nicholson correctly pointed out Mr. Roman failed to file a certificate of merit, and this failure warranted dismissal of his negligence claim under Pennsylvania law.[116] But we deferred dismissing the claim in light of the COVID-19 outbreak and Mr. Roman's status as an incarcerated pro se litigant.[117] We also found Mr. Roman adequately pleaded a deliberate indifference claim by alleging Dr. Little and Physician Assistant Nicholson "did not provide Mr. Roman with his requested care or the treatment recommended by physicians at Temple

10

University Medical Hospital" and ignored his requests for "medications for pain, a cane to walk with, bottom bunk status, and no stairs status."[118]

We held an in-person initial pre-trial conference on September 30, 2020 with Mr. Roman and counsel for Dr. Little and Physician Assistant Nicholson. We explained to Mr. Roman he had a right to request discovery from Physician Assistant Nicholson and Dr. Little and an obligation to respond to their discovery requests. We also reminded Mr. Roman he must file a certificate of merit for his professional negligence claims. Mr. Roman never filed a certificate of merit. He did not respond to Dr. Little's or Physician Assistant Nicholson's discovery requests. We compelled him to respond three times to no avail.[119] He ignored discovery.

Dr. Little and Physician Assistant Nicholson now move for summary judgment on Mr. Roman's claims, arguing: (1) we must grant judgment on the negligence claim because Mr. Roman failed to file a certificate of merit or provide an expert report; and (2) we must grant judgment on Mr. Roman's deliberate indifference claim because the record shows Dr. Little and Physician Assistant Nicholson provided extensive treatment for Mr. Roman's ailments.[120] Mr. Roman did not respond to Dr. Little's and Physician Assistant Nicholson's motion, nor has he adduced evidence to support his deliberate indifference claim. As Mr. Roman has neither filed a certificate of merit nor adduced evidence of deliberate indifference to a serious medical need, we grant Dr. Little's and Physician Assistant Nicholson's motion for summary judgment.

### A.     We grant judgment on Mr. Roman's medical negligence claim.

As Mr. Roman has failed to file a certificate of merit despite repeated reminders, we grant judgment on his medical negligence claim. Pennsylvania Rule of Civil Procedure 1042.3, which applies in federal court,[121] requires plaintiffs bringing medical professional negligence claims to file a certificate of merit within sixty days of filing a complaint.[122] A certificate of

merit is a statement written by an appropriate licensed professional with expert qualifications, stating "there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm . . ."[123] or a similar written statement claiming the defendant professional deviated from an acceptable professional standard. If a plaintiff fails to file a certificate of merit, the defendants must notice the plaintiff of their intent to enter judgment of *non pros* "no sooner than the thirty-first day after the filing of the complaint"[124] and then may move for entry of judgment of *non pros*, which is effectively the same as dismissal without prejudice.[125]

Dr. Little and Physician Assistant Nicholson moved to dismiss Mr. Roman's complaint for failure to file a certificate of merit within the time allotted. In our Memorandum granting in part and denying in part their motion to dismiss, we acknowledged Dr. Little and Physician Assistant Nicholson followed all requirements to obtain a judgment of *non pros* under Rule 1042.3.[126] But given Mr. Roman's incarceration and the onset of the COVID-19 pandemic, we deferred dismissing Mr. Roman's professional negligence claims.[127] We cautioned Mr. Roman, "[he] must now be aware Pennsylvania law does not allow medical malpractice cases to proceed absent a certificate of merit," and explained, "[w]e are only deferring to allow him to address this deficiency in light of the COVID-19 pandemic's effect on service and progressing while in prison."[128] We held an in-person initial pretrial conference on September 30, 2020, and we again reminded Mr. Roman he needed to file a certificate of merit to proceed with his professional negligence claims.

Despite our two reminders of his obligations under Rule 1042.3, Mr. Roman failed to file a certificate of merit. This failure is fatal to Mr. Roman's professional negligence claim.

### B.    We grant judgment on the deliberate indifference claim.

We grant judgment on the deliberate indifference claim because, although Mr. Roman undoubtedly had a host of serious medical needs throughout his incarceration, he failed to adduce evidence Dr. Little and Physician Nicholson exhibited deliberate indifference to those needs.

Incarcerated persons have the constitutional right to adequate medical care.[129] "Prison officials violate the Eighth Amendment when they act deliberately indifferent to a prisoner's medical needs by 'intentionally denying or delaying access to medical care or interfering with the treatment once prescribed.'"[130] To sustain a deliberate indifference claim, Mr. Roman "must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that "those needs were serious."[131] A prison official acts with deliberate indifference if he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[132]

"[P]rison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners."[133] "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."[134] Deliberate indifference requires a showing of the defendant medical provider's "obduracy and wantonness" to the plaintiff's medical needs.[135] Claims for constitutional harms require personal involvement on behalf of the government actor.[136] Examples of deliberate indifference include when a prison official "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment[;]"[137] and (4) "persists in a particular course of

treatment 'in the face of resultant pain and risk of permanent injury.'"[138] But short delays in treatment "unaccompanied by arbitrary or unduly burdensome bureaucratic procedures, and the refusal to summon the medical specialist of the inmate's choice, perform tests or procedures that the inmate desires, or to explain to the inmate the reason for medical action or inaction does not amount to cruel and unusual punishment."[139] To prevail on a delay or denial of treatment theory of deliberate indifference, Mr. Roman must offer evidence "sufficient to permit a reasonable jury to find that the delay or denial was motivated by non-medical factors."[140]

"A medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[141] A medical need may be considered "serious" if "'unnecessary and wanton infliction of pain' results as a consequence of denial of delay in the provision of adequate medical care."[142] "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."[143]

Dr. Little and Physician Assistant Nicholson do not dispute the seriousness of Mr. Roman's medical needs. Instead, they argue they provided adequate care and diligently addressed his various medical ailments as soon as they became aware of them. Having reviewed the evidence in the record, we agree Dr. Little and Physician Assistant Nicholson provided adequate care to Mr. Roman and did not exhibit deliberate indifference to his needs.

In our Memorandum granting in part and denying in part Dr. Little's and Physician Assistant Nicholson's motion to dismiss, we found Mr. Roman adequately pleaded deliberate indifference by alleging Dr. Little and Physician Assistant Nicholson: did not provide Mr.

Roman with his requested medical care or the treatment recommended by physicians at Temple University Medical Hospital after he personally informed them of his various medical conditions; disregarded his requests for pain medication, a cane, bottom bunk status, and no stairs status; and refused or neglected to refill his medications.

The entirety of the adduced evidence does not support Mr. Roman's allegations. Mr. Roman's allegation Dr. Little and Physician Assistant Nicholson failed to provide the treatment recommended by doctors who treated him before his incarceration lacks evidentiary support. The evidence confirms the opposite. Records of Mr. Roman's prescription history show medical professionals prescribed Baclofen and Naproxen within three days of his incarceration. While Mr. Roman alleges he did not receive medical treatment until September 13, 2020, the record shows he received treatment at sick call at least five times before September 13, 2020. He also had prescribed medication available to him in the pill line at least twice a day from August 5, 2020 to September 2 or 3, 2020, when his prescriptions expired. There is no evidence Mr. Roman sought medical treatment or a refill of his medication until September 13, 2020, at which point Physician Assistant Nicholson immediately refilled his medication. Having elected not to participate in discovery or respond to this motion, Mr. Roman has adduced no evidence the medical professionals created this ten-day lapse for non-medical factors.

Mr. Roman's allegation Dr. Little and Physician Assistant Nicholson ignored his requests for ground floor status, bottom bunk status, a no stairs order, and a cane are also flatly contradicted by the adduced evidence. Medical records reflected he had ground floor and bottom bunk housing restrictions from early in his stay at SCI Chester. Dr. Little and Physician Assistant Nicholson ensured these housing accommodations would continue upon transfer to Philadelphia County. When later, for reasons unclear in the record, Mr. Roman's housing accommodations

15

changed and he raised the issue to Physician Assistant Nicholson, Physician Assistant Nicholson immediately updated Mr. Roman's records to reflect he required these housing accommodations. During Mr. Roman's first visit with Physician Assistant Nicholson, Physician Assistant Nicholson issued him an elevator pass. While Physician Assistant Nicholson did not issue an order for a cane until October (two months into Mr. Roman's incarceration), there is no evidence Mr. Roman requested a cane earlier, and Mr. Roman has not adduced evidence sufficient for a jury to find a reasonable medical professional would have realized Mr. Roman's need for a cane earlier. In short, there is not a single incident in which Mr. Roman requested an accommodation for his disability and Dr. Little and Physician Assistant Nicholson refused it.

Mr. Roman's allegations Dr. Little and Physician Assistant Nicholson refused to refill his pain medication also lacks evidentiary support. Dr. Little and Physician Assistant Nicholson routinely refilled Mr. Roman's medication. The only time Dr. Little refused to refill a pain medication was when he refused to refill Mr. Roman's prescription for Tylenol #3, an opiate.  At this point, Mr. Roman was also prescribed Baclofen, Naproxen, and Trileptal. To replace the Tylenol #3, Physician Assistant Nicholson prescribed Cymbalta. When Mr. Roman expressed displeasure with the Cymbalta, Dr. Little replaced it with Neurontin. When Mr. Roman complained his pain persisted, Dr. Little refilled the Tylenol #3. Mr. Roman adduces no evidence temporarily replacing Mr. Roman's Tylenol #3, an opiate, with two alternate pain medications deviated from a normal standard of care. Nor does he adduce evidence from which a reasonable juror could determine Dr. Little and Physician Assistant Nicholson changed his medication for a non-medical reason.

### III.    Conclusion

We grant summary judgment dismissing Mr. Roman's remaining professional negligence

and deliberate indifference claims.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of a motion for summary judgment. Dr. Little and Physician Assistant Nicholson prepared an appendix and an SUMF. ECF Doc. No. 62. References to the appendix are by ECF document number and the corresponding Bates number, for example, "A1."

[2] ECF Doc. No. 62 at A1.

[3] *Id.* at A3, A5-A7.

[4] *Id.* at A2.

[5] *Id.*

[6] *Id.*

[7] *Id.* at A27.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.* at A113-14.

[12] *Id.* at A84.

[13] *Id.* at A73, A84.

[14] *Id.* at A411.

[15] *Id.*

[16] *Id.* at A146-47.

[17] *Id.*

[18] *Id.* at 407-08.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.* at A147.

[26] *Id.* at A401.

[27] *Id.* The medical records note "rtsc prn," which means "return to sick call *pro re nata*." *Pro re nata* means "as needed."

[28] *Id.* at A398.

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.* at A397.

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.* at A392.

[37] *Id.* at A392-93.

[38] *Id.* at A149. Mr. Roman alleges he reported to sick call on September 10, 2018 to address his back pain, but a corrections officer did not call his name to see a doctor. There is no evidence of Mr. Roman reporting for sick call on September 10, 2018.

[39] *Id.* at A389-91.

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.* at A418-19.

[44] *Id.* at A388.

[45] *Id.*

[46] *Id.*

[47] *Id.* at A457-58.

[48] *Id.* at A382-83.

[49] *Id.* at A151, A155, A382-84.

[50] *Id.* at A380-81.

[51] *Id.* at A380-81.

[52] *Id.* at A379.

[53] *Id.* at A377.

[54] *Id.* at A152-54, A377.

[55] *Id.* at A377-78.

[56] *Id.* at A155.

[57] *Id.*

[58] *Id.* A376.

[59] *Id.*

[60] *Id.*

[61] *Id.* at A374-75.

[62] *Id.* at A373.

[63] *Id.*

[64] *Id.* at A153, A368, 370-71.

[65] *Id.* A151-55, A368.

[66] *Id.*

[67] *Id.* at A157.

[68] *Id.* at A355-57.

[69] *Id.* at A355-56.

[70] *Id.* at A353-54.

[71] *Id.* at A159-160, A353-354, A478.

[72] *Id.* at A160.

[73] *Id.* at A351-52.

[74] *Id.* at A349-50.

[75] *Id.*

[76] *Id.* at A427-48.

[77] *Id.* at A427-38.

[78] *Id.*

[79] *Id.* at A342-43.

[80] *Id.* at A346-47.

[81] *Id.*

[82] *Id.* at A162, A481.

[83] *Id.* at A162.

[84] *Id.* at A340.

[85] *Id.* at A342-43.

[86] *Id.* at A337-38.

[87] *Id.* at A337.

[88] *Id.* at A355.

[89] *Id.* at A356.

[90] *Id.* at A136, A484.

[91] *Id.* at A344.

[92] *Id.* at A429-31, A433-34.

[93] *Id.* at A434.

[94] *Id.* at A435.

[95] *Id.*  at A437.

[96] *Id.* at A164.

[97] *Id.* at A330-31.

[98] *Id.* at A328-29.

[99] *Id.* at A328, A453.

[100] *Id.* at A453.

[101] *Id.* at A164.

[102] *Id.*

[103] *Id.* at A324-25.

[104] *Id.* at A166-67, A325.

[105] *Id.* at A319.

[106] *Id.* at A167, A319-20.

[107] *Id.* at A167.

[108] *Id.* at A315-16.

[109] *Id.* at A315.

[110] *Id.* at A491.

[111] *Id.* at A311-12.

[112] *Id.* at A170, A173, A311-12.

[113] *Id.* at A307-08.

[114] ECF Doc. No. 9.

[115] ECF Doc. No. 27 at 1.

[116] *Id.* at 19-20.

[117] *Id.* at 20.

[118] *Id.* at 10-13.

[119] ECF Doc. Nos. 50, 52, 53.

[120] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson*, 850 F.3d at 533-34 (3d Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

[121] *See, e.g.*, *Iwanejko v. Cohen & Grigsby, P.C.*, 249 F. App'x 939, 944 (3d Cir. 2007).

[122] Pa. R.C.P. 1042.6(a).

[123] *Id*. at (a)(1).

[124] Pa. R.C.P. 1042.6(a).

[125] *See Harris v. Hershey Medical Center*, No. 08-843, 2009 WL 2762732, at *7 (M.D. Pa. Aug. 27, 2009*)* (citing *Stroud v. Abington Mem'l Hosp.*, 546 F.Supp.2d 238, 250 (E.D. Pa. 2008)).

[126] ECF Doc. No. 27 at 20.

[127] *Id.*

[128] *Id.*

[129] *City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244 (1983) (holding Due Process rights of a pretrial detainee are "at least as great as the Eighth Amendment protections available to a convicted prisoner"); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (finding "[a]cts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" violate the Eighth Amendment right to be free from cruel and unusual punishment).

[130] *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017).

[131] *Id.*

[132] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

[133] *Durmer v. O'Carroll*, 991 F.2d 64, 67 (citing *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)).

[134] *Pearson,* 850 F.3d at 535 (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990)).

[135] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

[136] *Evancho v. Fisher*, 423 F. 3d 347, 353 (3d Cir. 2005).

[137] *Rouse*, 182 F.3d at 197.

[138] *Id*. at 197 (quoting *White v. Napolean*, 897 F.2d 103, 109-11 (3d Cir. 1990)).

[139] *Estien v. Showalter*, No. 13-2474, 2017 U.S. Dist. LEXIS 163483, at *56 (M.D. Pa. Sept. 28, 2017).

[140] *Pearson,* 850 F.3d at 537.

[141] *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal citations omitted).

[142] *Id*. (quoting *Estelle,* 429 U.S. at 103).

[143] *Estelle*, 429 U.S. at 104-05.